THE BOARD OF SUPERVISORS OF ORLEANS COUNTY, Appellant, *v.* SAMUEL C. BOWEN and others, Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, MARCH, 1871.)

County supervisors may compromise and settle a judgment recovered by them for the county, pending an appeal therefrom.

The power is incident to the power to sue, and also arises from their authority " to make such orders concerning the corporate property as they may deem expedient."

The board of supervisors accepted a proposition to compromise and settle a judgment recovered in favor of the county against the defendant, pending the latter's appeal therefrom in the Court of Appeals, and directed their attorneys to make and enter into stipulations, to be signed by the defendants in person and their attorneys, carrying out the compromise, and the county treasurer to make use of the funds arising therefrom. The stipulation, which required the signatures of the defendants and their attorneys, as well as of the plaintiffs attorneys was soon after presented to the plaintiff unsigned by its attorneys, but otherwise complete, and was accepted and ordered to be placed on file; the county treasurer also reported, as the fact was, that he had used, as directed, a payment made by the defendants according to the terms of the compromise, and the report was accepted and directed to be filed.—*Held*, that the supervisors and their successors in office were bound by the stipulation, and could not subsequently rescind their action in respect thereto.

*Held,* further, that a certiorari, obtained at the instance of a citizen and tax-payer, removing the proceedings respecting the settlement, into the Supreme Court, after acceptance of the defendants' offer, did not stay proceedings of the plaintiff thereon.

APPEAL from an order of Mr. Justice DWIGHT, granted at the Monroe county Special Term in December, 1870.

The defendant moved in the action at Special Term, upon affidavits, to set aside an execution issued upon a judgment recovered therein by the plaintiff, for moneys received by the defendant Bowen, as county treasurer of Orleans county, and deposited by him with the Bank of Medina.

The action was against Bowen and his sureties, upon the usual county treasurer's bond ; and it appeared from the moving papers that, by reason of the failure of the Bank of Medina, Bowen had been unable to meet the payment of certain bonds of the county falling due in March, 1867, and for payment whereof the funds so deposited by him, being some $26,347.49, had been reserved, and that a deficiency appeared in his annual accounts for that amount, in consequence of which the suit had been brought, and the judgment recovered. On motion by the defendants for a new trial, heard at General Term, the judgment had been affirmed, and the defendants had taken an appeal therefrom, in good faith, believing that there were several points in the case fatal to the judgment, to the Court of Appeals.

It further appeared that the defendants, before moving at General Term, had offered a certain sum by way of compromise, which the plaintiff had declined, and that, after affirmance of the judgment, the defendants offered to pay the principal of the sum recovered, without costs or interest, in four equal payments, and to make the first payment on the 1st March, 1870, and the remaining payments annually thereafter. This offer was made in November, 1869, and, before action had been taken upon it, the appeal was taken to the Court of Appeals. On the 11th February, 1870, the plaintiff, duly convened as a board, passed a resolution accepting the defend

ants' offer, with certain conditions, to which the defendants did not assent.

At a subsequent session of the board, on the 25th of the same month, a resolution, offered as a substitute for that of the 11th February, was adopted, wherein, after reciting the judgment and pendency of the appeal, and that it was "deemed best and advisable to compromise and settle said litigation without further cost and expense, therefore, in consideration thereof," it was resolved to accept the defendants' offer, modified so as to require the first payment to be made on the 5th, instead of the 1st of March, 1870, provided that the judgment should stand as security for the payments, and that it should not, in any way, be affected, impaired or invalidated until full performance by the defendants; whereupon the judgment was to be discharged and satisfied.

The resolution further required the attorneys for the board to make and enter into the necessary stipulations to carry its provisions into effect, and it provided that the stipulations should have no effect until signed by the defendants as well as by the defendants' attorneys, and that the resolution should not in any way affect the defendants' liability until the stipulations should be made and entered into as provided.

By a further resolution of the board, on the same day, the county treasurer was directed to use the moneys paid in to him in taking up the overdue bonds of the county, to the extent of the payments made by the defendants in compromise of the judgment.

On the 3d of March, 1870, a writ of certiorari was obtained by one Morgan, as a citizen and tax-payer of the town of Murray, in Orleans county, requiring the plaintiff to return and certify the proceedings and all papers relating to the settlement of the judgment, &c., into the Supreme Court, at a General Term, to be held in May, 1870.

On the 21st of the same month, a stipulation, drawn by the plaintiff's attorneys and signed by the defendants and their attorneys, which, by its terms was to have no effect until signed by the defendants in person and their attorneys, and

also by the plaintiff's attorneys was presented to the board of supervisors, then in session, was received by it and placed on file, and the board was also informed by the defendants' attorneys that the defendants had made the payment provided for by the resolution of February 25th, and complied with the stipulation and resolution up to that time. The county treasurer having also been required by the board to report immediately whether the defendants had complied with the requirements of the resolution of February 25th, in making the payment provided for on the 5th March, and having reported affirmatively, and that he had paid out the moneys received, as directed by the board, in taking up the overdue county bonds, it was resolved " that the report of the treasurer be accepted, and recorded in the minutes of the proceedings."

At a meeting of the board in April, 1870, it passed a resolution purporting to repeal all previous resolutions and acts of the plaintiff in regard to the settlement and compromise, and refused to act further in the premises, and subsequently, on the 26th October, 1870, repassed the resolution of April, and thereupon, under its direction, an execution issued upon the judgment for the amount thereof, with interest.

*J. H. White*, for the appellant.

*Geo. F. Danforth*, for the respondents.

Present—MULLIN, P. J., and JOHNSON, J.

By the Court—JOHNSON, J. This is an appeal from an order at Special Term, setting aside an execution issued by plaintiffs upon the judgment in the above entitled action, and prohibiting the plaintiffs from proceeding to enforce such judgment until the defendants shall have made default in paying the amount agreed upon between the parties by way of compromise and settlement of said judgment.

It cannot be doubted, we think, that the agreement between the parties to compromise and settle the judgment in ques-

tion, in view of what had been done under it, was a valid and binding compromise and settlement, if the plaintiffs had power to settle and adjust the controversy between them and the defendants in such a case. It was made pending the litigation. The plaintiffs had, after trial, obtained judgment for $31,295.96, damages and costs, and the defendants had appealed therefrom to the Court of Appeals, being advised and believing, as the moving affidavits show, that there were several points in said case fatal to said judgment, on which it would be reversed in the appellate court.

It was while the appeal so brought was pending that the proposition for settlement was made by the defendants, and accepted by plaintiffs.

The plaintiffs' counsel contends that there was no agreement to settle consummated between the parties, conceding the power of the plaintiffs to make such agreement. But we are of the opinion that what was done by the parties constituted an agreement to settle the judgment. It was not left inchoate, but was so far arranged and closed that the defendants acted under it and performed according to its stipulations, which performance was accepted and adopted by the plaintiffs. The proposition for settlement was made on the part of the defendants; and on the 25th of February, 1870, at a regular meeting of the plaintiffs, and while they were in session, acting as the board of supervisors of the county, a resolution was by them adopted, with a preamble reciting the judgment and the appeal, declaring that " it is deemed best and advisable to compromise and settle said litigation without further cost and expense; therefore, in consideration thereof, be it *Resolved*," &c. The resolution accepts the defendants' proposition, in all respects, except that it varies the time of payment of the first installment. And by the same resolution the plaintiffs' attorneys are directed to make and enter into the necessary stipulations with the defendants to carry their resolution into effect. By another resolution, adopted at the same time, the treasurer of the county is instructed and

directed how to use the funds as they should be paid to him by the defendants under the arrangement.

A stipulation was accordingly drawn by the plaintiffs' attorneys, substantially in accordance with the resolution on that subject, but it provided that it should have no effect until it was signed by the defendants in person, as well as by their attorneys, and the attorneys of the plaintiffs. On the 5th of March thereafter the defendants paid the first payment, $6,586.88, in pursuance of the compromise, which was received by such treasurer, and the amount paid and applied by him according to the resolution of the plaintiffs on that subject. On the 21st of the same month the defendants presented to the plaintiffs, then in regular session, the stipulation drawn by their attorneys, signed by the defendants personally and by their attorneys, and informed them of the first payment previously made to the treasurer; and the stipulation, as thus signed, was received and filed by the plaintiffs, and the treasurer's report, showing that he had received said first payment and used it according to instructions, was accepted and recorded. The plaintiffs' attorneys refused to sign the stipulation they had drawn and delivered to the defendants; but the plaintiffs accepted it and filed it without its having been signed by their attorneys, and ratified and confirmed the payment. Most clearly, here was a complete and perfect agreement. The plaintiffs, having accepted the agreement signed by the defendants, and ratified the previous payment therein provided for, must be held to have waived the signatures of their own attorneys to the stipulation, and consented to be bound by it without such signatures. This they might undoubtedly do. That was something for them to perform or cause to be performed, and, if the defendants were willing to dispense with it, no good reason is perceived or suggested why the plaintiffs could not also, and consent that the agreement might be performed and carried out without that formality. If the plaintiffs did not intend to be bound, they should have refused to receive the stipulation of the defendants, and given them notice to

that effect, and ordered the treasurer to refund the money paid by way of performance.

After this, it was too late for the plaintiffs to repudiate the arrangement. The rights of the parties had become fixed, and could not be unsettled by the action of one party alone. If the plaintiffs could rescind at all, at their own election, which we think was impossible, they could not do it without restoring what they had received by virtue of the arrangement.

They could not retain the fruits of the agreement, and absolve themselves from its burdens and obligations. If the plaintiffs were competent to make such an agreement, it was binding upon them until the defendants made default in performance on their part. And their resolutions of the 27th April, 1870, repealing, rescinding and reversing their former acts and resolutions on the subject, and ordering execution to be issued to collect and enforce the entire judgment, are void and of no force or effect. They could not thus undo what they had before done. They are the same parties, in law, to the same transaction. Although composed of different individuals at the time of the last action, it was the same identical body, and party to the former litigation, and bound to the same extent and in the same manner as though the original individual members still composed it. They undertook to ignore wholly the payment already made, and of which the county had received the benefit, and ordered the entire judgment to be enforced by execution.

The question, then, arises, whether the plaintiffs had the power to settle and compromise this litigation. Each county in this State is a body corporate, having certain prescribed powers. Amongst others is the power to sue and be sued. It does not possess, nor can it exercise, any corporate powers, except such as are enumerated in chapter twelve, part one, of the Revised Statutes, or such as shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given. All proceedings by or against a county in its corporate capacity must be in the name of the board of

supervisors of such county. The powers of a county, as a body politic, can only be exercised by the board of supervisors thereof, or in pursuance of a resolution by them adopted. (1 R. S., 364, art. 1, §§ 1–4.) The board of supervisors is, so to speak, the board of directors, and managing agents of the corporation, which is the county. The corporation can act, and exercise its powers, only through this board. It has no other voice or mode of action. When this board is sued, as a board, the county is sued; and when the board brings an action, it is the action of the county. In substance and legal effect, the board of supervisors is the corporation. The corporation, having the power to sue and be sued, has clearly, as we think, the power to terminate the litigation in which it has become engaged, as a power necessary to the exercise of the power to begin it and carry it on. The power to commence and prosecute actions necessarily includes and comprehends the power to finish them, and to determine how far they shall be carried on, and in what manner they may be ended. It includes the power to discontinue the action commenced, upon terms or otherwise, and to agree upon the terms. In short, we see no reason why a corporation of this kind may not settle, compromise or discontinue actions in which it is lawfully engaged as a party, the same as any other corporation acting through its officers and boards of directors.

It would be a most extraordinary doctrine to hold, that, because a county had become involved in a litigation, it must necessarily go through with it to the bitter end, and had no power to extricate itself by withdrawal, or by agreement with its adversary. It is quite clear that third persons, not parties to the action, whether tax-payers of the county or otherwise, cannot control the conducting of the action or interfere with it. Either the parties to the action must settle it, or it cannot be done at all.

Actions are brought to enforce rights, or supposed rights, and to redress wrongs, and, if the end for which the action is brought can be attained by adjustment or settlement before a final adjudication, the same power is exercised which is exer-

cised in pursuing the remedy. But it is not necessary to rest the power to settle the action in question upon the implied power which inheres in the power to commence, continue and maintain every action. The plaintiffs had proceeded with their action to judgment. This judgment was the property of the corporation. The defendants were not content with the adjudication, and appealed to the higher court. But the judgment stood, and was in force, until reversed or settled; and a reversal was what the defendants were seeking to accomplish by their appeal. Amongst the express powers conferred upon boards of supervisors is the power "to make such orders concerning the corporate property of the county as they may deem expedient." (1 R. S., 366, § 4, subd. 1.) This settlement, effected by resolution, and by stipulation, was, most clearly, an order concerning the corporate property of the county. That they deemed it expedient to make such order appears plainly upon the face of their proceedings, and cannot be gainsayed. We are of the opinion, therefore, that the power exercised in making this compromise and settlement by the plaintiffs falls directly within the express powers conferred upon such bodies. It is claimed in behalf of the plaintiffs that what they undertook to do was to give away the corporate property, and that this was wholly beyond their power. But here was no gift, in any just or proper sense of the term. It was a gift in the same sense that every party to a controversy gives when he relinquishes a portion of a claim he makes against his adversary to effect a settlement and avoid further litigation, and no other. It is a sacrifice of a portion of a claim which may never be fully sustained, upon the altar of peace. Such settlements have always commended themselves to the favor of courts and of the law. What the plaintiffs did, in this case, was, to throw off the interest and costs upon their claim, in order to get rid of the defendants' appeal, and avoid the expense and delay of further litigation. It has been held, that a settlement between a board of supervisors of the county and the county treasurer, where it was agreed that the treasurer might pay the debt only, without interest,

where the county was entitled to interest, with a full knowledge of all the facts (the claim to interest being disputed by the treasurer,) was conclusive upon the board, and that the claim could not be opened and litigated after such settlement. (*Supervisors of Chenango* v. *Birdsall*, 4 Wend., 453.) There no action was pending when the settlement was made. It was a settlement of a disputed claim. The board of supervisors afterward undertook to revive and enforce it by action, and it was held that no action could be maintained upon it, however just the claim might have been originally. Here the case is much stronger for the defendants. The dispute had been carried into court, and had assumed the form of an issue and a judgment in an action. It is of no avail to say that the defendants could not have succeeded on their appeal in reversing the judgment. The court will never inquire, in such cases, whether the claim relinquished was in reality just or unjust. It is enough that it was disputed, and relinquished in order to effect a settlement and end litigation. (*Stewart* v. *Ahrenfeldt*, 4 Denio, 189; *Russell* v. *Cook*, 3 Hill, 504.) The strictness to which courts will hold parties to the settlement of actions between them is illustrated in the case of *Shank* v. *Shoemaker* (18 N. Y., 489). That was a case, as I understand it, where the commissioners of excise had obtained the judgment appealed from, and, if it was, it has an important bearing upon the question of the power of public officers, suing on behalf of the county or town, to settle the litigation.

We do not think the writ of common-law certiorari, sued out on the relation of Alva S. Morgan against the plaintiffs, and served on the 3d of March, 1870, to bring up for review the proceedings in this action for the settlement thereof, has any bearing upon the questions involved in this appeal. Morgan was not a party to the action, but a mere citizen and taxpayer of the county, and had no right to intervene in regard to the conduct of the parties to an action in this court, and the writ was quashed on that ground, and also upon the ground that the writ would not lie in such a case. But, granting that the writ, while it was in life, could operate as a stay

of all proceedings between the parties to the action, the plaintiffs disregarded it, and proceeded to complete the settlement, and are in no situation now to invoke the quashed and defunct writ to shield themselves from the consequences of their agreement.

But, beside this, they are estopped from doing so, if they might otherwise, as long as they retain the fruits of the settlement thus effected. They are proceeding to enforce the entire judgment, while keeping the money paid upon an agreement in which the defendants have made no default. It is no answer to say, that the board of supervisors is now composed of different individuals, who disapprove of the acts of their predecessors. It is still, as has been before said, the same body in law, and the same parties plaintiffs; and, as was said by MARCY, J., in *Supervisors of Chenango* v. *Birdsall*, "the idea that one board of supervisors may rejudge the matters passed upon by a former board, is not to be tolerated." And this is so, more especially where the adverse action or adjudication interferes with and unsettles vested rights. It is plain enough that the board, as now constituted, have no power to do what the board, as previously constituted, could not have done in the premises.

We are of the opinion, therefore, that the order at Special Term was right, and should be affirmed, with costs.

TALCOTT, J., having been previously engaged as counsel in the action, did not sit.

Order affirmed.