[No. 7,060.—In Bank.]

## THE BANK OF CALIFORNIA *v.* SHABER.

CLAIM AGAINST A CITY FOR INJURIES CAUSED BY MOBS OR RIOTS.—A claim for damages for injuries to property, caused by a mob or riot, (in the City and County of San Francisco) is not to be presented in the first instance to the Board of Supervisors for allowance, as in the case of other claims, but a judgment must first be had, and thereupon the board *must* order it to be paid, unless they shall determine to appeal.

ID.—ATTORNEY AND COUNSELLOR OF THE CITY AND COUNTY OF SAN FRANCISCO—APPEAL.—The Attorney and Counsellor of the City and County of San Francisco, while he holds his office by a tenure independent of the board, cannot act independently or against the directions of the board; and *held,* accordingly—where the board had determined by ordinance not to appeal from a judgment against the city and county for damages, caused by a mob or riot, and had ordered the payment of the same—that an appeal taken by the Attorney and Counsellor was without authority, and did not stay the enforcement of the order of the board.

ID.—ESTOPPEL.—*Held, further,* that the order of the board, directing the payment of the judgment, operated as an estoppel upon the city and county, as against an assignee for value, who purchased the claim, relying upon the action of the board.

ID.—MANDAMUS.—And *held, further,* that upon the refusal of the County Treasurer to pay the claim, *mandamus* was the proper remedy.

ID.—APPEAL—STAY OF PROCEEDINGS—MANDAMUS.—Ross, J., (dissenting) was of the opinion, that the appeal by the City and County Attorney could not be treated as a nullity, and that, pending the appeal, the Treasurer could not, by mandamus, be compelled to pay the claim.

ID.—ID.—ID.—ID.—SHARPSTEIN, J., and MCKEE, J., (also dissenting) were of the opinion that *mandamus* could not be maintained: 1st, because the appeal, though improperly taken, operated as a stay; and 2ndly, because the petitioner had a plain, speedy, and adequate remedy, by a motion to dismiss the appeal.

APPLICATION for a writ of mandamus to Wm. R. Shaber, Treasurer, etc.

*Wilson & Wilson,* for the Plaintiff.

*John L. Murphy,* for the Defendant.

MYRICK, J.:

This is an application for a mandamus, to compel the respondent, as Treasurer, to pay a certain claim out of moneys in the treasury.

It appears from the petition, that on the 13th day of July, 1878, one J. C. Smith commenced an action against the City and County of San Francisco, in the District Court of the Fifteenth Judicial District, in and for said city and county, to recover damages for injuries to property in said city and county, caused by mobs and riots, which action was defended by said city and county; that such proceedings were had therein that said Smith recovered a judgment against said city and county for $65,273.76 damages, and $912.50 costs, which judgment was entered August 26th, 1879; that on the 1st day of September, 1879, said Smith presented to the Board of Supervisors of said city and county a certificate of the Presiding Judge of said Court, a certificate of the clerk of said Court, and a copy of the judgment roll in said action, together with a written demand, verified, for the payment of said judgment; that on the 30th of October, 1879, said Board of Supervisors, acting on the opinion and advice of the then Attorney and Counsellor for said city and county, and being satisfied that any further proceedings in said action, on the part of said city and county, would be unsuccess‧ ful, determined that said judgment should be paid, and thereupon an ordinance or authorization to that end was adopted by said board and approved by the Mayor; that the said claim was duly presented to the Auditor of said city and county, who duly indorsed the same " allowed," with date and proper fund;

that afterward, November 11th, 1879, the claim was presented to the then Treasurer of the said city and county for payment, but there being no moneys with which to pay the claim, the same was duly registered by said Treasurer; that after such registration, the said Smith duly assigned said claim to petitioner for value; that on the 15th of January, 1880, petitioner presented the claim to respondent, the present Treasurer, for payment, which payment was refused; and that at the last-named time, there was sufficient money in the treasury, properly applicable, with which to make the payment; that said Board of Supervisors never authorized any appeal from said judgment to be taken.

The respondent resists the application for the writ, upon two grounds, viz:

1. That neither the judgment, nor the claim based upon the judgment, is an existing or valid claim against said city and county. ·

2. That on the 15th of January, 1880, the said city and county duly appealed from the judgment of said District Court to this Court, which appeal is now pending in this Court, undecided.

*First.*—As to whether the claim referred to was, or is, a valid claim against said city and county.

Section 71 of the Consolidation Act authorizes the Board of Supervisors to levy taxes " for the ·payment of ,all demands upon the treasury thereof, authorized by law to be paid out of the same."  Section 4452, Political Code, provides that " every municipal corporation is responsible for injuries to real or personal property situate within its corporate limits, done or caused by mobs or riots," and according to § 4453, Political Code, the action must be tried in the county where the occurrence took place.  Section 4455, Political Code, provides that " on the certificate of the presiding officer, or of the clerk of the Court in which the judgment is rendered, the Board of Supervisors of the county, or the legislative authority of the city, must, by ordinance, direct and cause to be issued a warrant for the payment thereof on the general fund, and the same must be paid in its regular order, as other warrants of the municipal corporation are paid."  According to the Act of April 23rd, 1858,

(Stat. 1858, p. 235) the Board of Supervisors of the City and
County of San Francisco has power "to order paid any final
judgment against said city and county." Section 84 of the
Consolidation Act requires that every demand upon the treasury
must, before it can be paid, be presented to the Auditor of the
City and County of San Francisco to be allowed.

From these statutes, it will be perceived that a claim for
damages caused by mobs or riots is not to be presented in the
first instance to the Board of Supervisors for their rejection or
allowance in whole or in part, as in the case of the general de-
mands made against the city and county; but a judgment must
first be had, which is an adjudication upon the merits and legal-
ity of the claim, and after the judgment is rendered, the Board
of Supervisors have no claim to "allow"—that is, no claim
which they can say that they will cause to be paid or not, as
they may deem just—but the claim is one which they *must* or-
der to be paid, unless they shall determine to test the correct-
ness of the judgment on appeal to the Supreme Court; that
their discretion extends only to the question whether or not
they will appeal; that if they determine not to appeal, they
must order, in usual course, the claim to be paid. After the
order of payment is made by the Board of Supervisors, the
claim must go to the Auditor for his scrutiny, and, when ap-
proved by him, it must be paid by the Treasurer in due course.

In this case, it appears that this claim went through each and
all of the steps requisite before payment; which leads us to
the consideration of the other objection made by the respondent,
namely :

*Second.*—That there has been an appeal from the judgment
of the District Court to this Court.

It appears from the papers on file that, at the time the Board
of Supervisors was considering the question, whether it would
order the payment of the judgment, the expediency of an ap-
peal was considered, and a committee of the board conferred
with the then Attorney and Counsellor of the city, and the result
was, that instead of directing an appeal to be taken, the board
ordered the judgment to be paid. It also appears that no or-
der or authorization of the board, that an appeal be taken, has
ever been given. The appeal was taken, (so far as it is an ap-

peal) by the Attorney and Counsellor of said city and county, upon his own responsibility, upon his own judgment, and in accordance with what he deemed to be his official duty, more than two months after the claim had been registered for payment—on the same day on which it was last presented for payment. Let us then see if he had authority so to do.

The Act of 1862 (Stat. 1862, p. 98) created the office of Attorney and Counsellor of said city and county, without defining his duties. An amendment to that act was passed, April 27th, 1863, (Stat. 1863, p. 771) defining his powers and duties, as follows: " Said Attorney and Counsellor shall perform such duties as Attorney and Counsellor in and for the said city and county, as the Board of Supervisors of said city and county shall from time to time prescribe."

Thus it will be seen that while he holds his office independent of a tenure derived from the board, he must receive from the board directions as to such duties as he may be called upon to perform. He cannot act independent of and against the directions of the board. The office of the Attorney and Counsellor of the city is continuous, even though different persons may be incumbents at different times; and if, in any given matter, general directions are given by the board to the Attorney and Counsellor, that he attend to and defend or prosecute a suit, it might be implied that he had authority to take such steps, and pursue such course as his judgment should direct, to a final conclusion; but if, at any time, the board should determine not to proceed further in the prosecution or defense of a suit or other matter, such determination by the board is binding upon the Attorney and Counsellor, and he must be governed thereby.

In this case, the determination of the board not to prosecute an appeal, and the making of the order for the payment of the claim, terminated the functions of the Attorney and Counsellor in regard to the suit and its conduct, and he was relieved of all further responsibility in the matter; he had no authority to review, reverse, or postpone the action of the board; its order was a determination not to appeal, and that the judgment should be paid, and an expression of opinion on its part that an appeal would be ineffectual; and the appeal thereafter taken by the Attorney and Counsellor, being without authority, cannot and

does not stay the enforcement of the order of the board.   No act of fraud is alleged as to any party.

It may be added that the city by its proper officers having in effect determined not to appeal from the judgment, and having by resolution directed that the amount of the judgment be paid, (the board having the power so to do) and it appearing that the petitioner, relying upon this action of the board, bought the claim for value, we think respondent is estopped from now contesting the validity of the judgment.

In support of the views herein expressed, reference may be had to the following authorities: *People* v. *Fitzgerald, Treasurer,* 54 How. Pr. 1; *Board of Supervisors* v. *Bowen,* 4 Lans. 31; *People* v. *Lawrence,* 6 Hill, 244; *El Dorado County* v. *Elstner,* 18 Cal. 144; *Supervisors* v. *Briggs,* 3 Denio, 173; *Martin* v. *Supervisors,* 29 N. Y. 645.

In *Board of Supervisors* v. *Bowen,* 4 Lans. 31, the Court says: "The powers of a county, as a body politic, can be exercised only by the Board of Supervisors. When this board is sued, the county is sued. The corporation having the power to sue and be sued, has power to terminate the litigation. It would be a most extraordinary doctrine to hold, that, because a county had become involved in a litigation, it must necessarily go through with it to the bitter end, and had no power to terminate it.

In *The People* v. *Fitzgerald,* 54 How. Pr. 1, where bills had been passed upon and audited by the Board of Supervisors, and the certificates thereof duly assigned to the relator, *held,* that on refusal of the County Treasurer to pay the same, mandamus was the proper remedy. The action of the board was conclusive, and the Treasurer is estopped from questioning its correctness. Let the writ issue.

MORRISON, C. J., and THORNTON, J., concurred.
McKINSTRY, J., concurred in the judgment.

Ross, J., dissenting:

I dissent. I think the writ should be denied, for the reason that we cannot, in this proceeding, treat the appeal taken by the City and County Attorney as a nullity. In my opinion, how-

ever, when the Board of Supervisors directed the judgment that had been recovered by Smith against the City and County of San Francisco to be paid, it was, in effect, an ending of the controversy, and a determination by that body not to take an appeal from the judgment. And I think it cannot be doubted that the Board of Supervisors had the power to stop the litigation by directing payment of the judgment, rather than put the city and county to further cost in the prosecution of an appeal, which, as shown by the record in this proceeding, they considered, after consultation with the late City and County Attorney, who was the attorney who tried the cause, would be a fruitless appeal. (*Board of Supervisors of Orleans County* v. *Bowen,* 4 Lans. 30, 31.) The record here shows that after this action on the part of the Board of Supervisors, after the resolution directing payment had been approved by the Mayor, and after the claim had been presented to the Auditor and indorsed " allowed," and after it had been presented to the Treasurer for payment, and by the latter official duly registered, but not paid for want of funds, the petitioner, the Bank of California, in good faith, and for value, purchased the demand. Subsequent to all this, the present City and County Attorney, of his own motion, and in pursuance of what he deemed his duty, took an appeal to this Court from the judgment. The appeal was not directed or authorized by the Board of Supervisors, and the action of the City and County Attorney in that regard was in conflict with the previous action of the board respecting the matter. Nevertheless an appeal was taken by the law officer of the city and county, and is still pending, and as long as it exists, I do not see how the Treasurer can be compelled by mandamus to pay the claim. I think it proper, however, to say that the appeal should in my judgment, be dismissed on motion; for I think, that in view of the facts appearing, the city and county would be estopped from further questioning the legality of the demand, even had the Board of Supervisors authorized the appeal, which, as we have seen, it did not do. (*People* v. *Fitzgerald, Treas.,* 54 How. Pr. 1; *Martin* v. *Supervisors,* 29 N. Y. 645; *El Dorado Co.* v. *Elstner,* 18 Cal. 144; *Board of Supervisors* v. *Bowen,* 4 Lans. 31.)

SHARPSTEIN, J.:

I dissent. In my opinion, this application cannot be granted consistently with the law relating to mandamus.

1. If the act is not one which the law specially enjoins the performance of by the Treasurer, as a duty resulting from his office, the writ ought not to issue. (Code Civ. Proc. § 1085.)

It is conceded that an appeal is pending in this Court from the judgment which the Board of Supervisors ordered to be paid, and which the Treasurer refuses to pay because of the pendency of such appeal. One effect of an appeal is to stay all further proceedings upon the judgment appealed from until the determination of the appeal. If we accord to this appeal that effect, it operated *ipso facto* as a stay from the time it was perfected. That such was, and is, the effect of it, seems too plain for argument. But it is contended, however, that the appeal was improperly taken, because the Board of Supervisors did not direct it to be taken, but, on the contrary, ordered the judgment to be paid before the appeal was taken. Was that a proper matter for the Treasurer to determine? If, instead of an appeal being taken, an injunction which forbade his paying the judgment had been served upon him, no one would claim that he might disregard that on the ground that the case was not one in which an injunction could properly issue. Nor would a court compel him by mandamus to pay the judgment, after being so enjoined, although it was apparent that the injunction was improperly granted. If the Treasurer himself was not authorized to determine the validity of the appeal, the Court, in this proceeding, will not determine it. What he was not fully authorized and bound to do without the command of this Court, this Court will not command him by mandamus to do. If there be any doubt as to the duty of an officer to act in a given case, courts will not by mandamus compel him to act. Before we can grant the application in this case, we must determine that the appeal was improperly taken, and that, too, in a proceeding to which the officer taking the appeal is not a party. It does not seem to me that an appeal to this Court can be virtually dismissed in a case where its validity is only collaterally involved. I think it can only be done in a direct proceeding, in

stituted for that purpose. To grant the writ prayed in this case, is to decide that the Treasurer was bound to determine whether the law officer of the city, whose chief duty it is to act as the legal adviser of the other officers, transcended his authority in taking an appeal to this Court. If it was not the duty of the Treasurer to determine that question, then there is no ground for the issuance of a writ of mandamus to him, in this case.

2. It does not appear in this case that the plaintiff has not a plain, speedy, and adequate remedy in the ordinary course of law. (Code Civ. Proc. 1086.) If the appeal pending in this Court is here under circumstances which will justify this Court in disregarding it to the extent demanded by the plaintiff, then this Court would, upon a single motion, dismiss it. Can any remedy more plain, speedy, and adequate than that be devised? And that, too, would be in the ordinary course of law. It cannot reasonably be supposed that this Court would hesitate to dismiss an appeal taken without authority. If the City and County Attorney had no authority to take this appeal, the Court, upon being satisfied that he had not, would promptly dismiss it. And the want of authority to take the appeal is the only ground upon which it is even suggested that the Court can grant this application. Then why not attack the validity of the appeal directly instead of collaterally? Why proceed against an officer who had no hand in that matter, instead of against the one who is wholly responsible for the appeal ?

To accomplish, indirectly, by mandamus, what can be accomplished directly by a simple motion is, as I view it, to reject a plain remedy and resort to a doubtful one. This the statute does not sanction. "The existence or non-existence of an adequate and specific remedy at law in the ordinary forms of procedure is, therefore, one of the first questions to be determined in all applications for the writ of *mandamus*, and whenever it is found that such remedy exists, and that it is open to the party aggrieved, the courts uniformly refuse to interfere, by the exercise of their extraordinary jurisdiction." (High's Extraordinary Remedies, 17.)

I am not satisfied that it was the duty of the Treasurer to disregard the stay which the appeal from the judgment created, and I am perfectly satisfied that the plaintiff, upon its own

theory, has a plain, speedy and adequate remedy, by a motion to dismiss the appeal, which constitutes the only obstacle to the payment of the judgment. Therefore, I think that the application for the writ of mandamus in this case should be denied.

McKee, J., concurred in the dissenting opinion of Mr. Justice Sharpstein.