Corlett, J.
On the 7th day of May, 1883, the mayor appointed Michael Newell a police commissioner of the city of Buffalo for the term of six years, he at once qualified and entered upon the discharge of the duties of his office. In July, 1884, the people, through the attorney general, brought an action in the supreme court for the purpose of ousting him from office upon the sole ground that he was an alien not a citizen of the United States, and therefore disqualified from holding the position or discharging the duties of police commissioner, the complaint was framed upon that theory and assumption.
N ewell, the defendant, throughDay & Romer, his attorneys, defended the action and in his answer controverted the charge of his alienage. It also alleged that he was a citizen qualified-to hold the office, discharge its duties, and that he was lawfully so engaged. The action was tried at the Erie circuit and resulted in a dismissal of the complaint on the merits, with costs against the plaintiff. The trial court decided that Newell was a citizen eligible to hold the office; that he was properly engaged in the discharge of its duties, and that he was entitled to its emoluments. Judgment was entered accordingly, after which the plaintiff appealed to the general term, which appeal is still pending. After judgment and the appeal the common council of the city employed Day & Romer to defend the appeal. A bill was also presented in their behalf for legal services performed by them in defend *338 ing the action against Newell, the amount being $500 aboye the taxable cost. This bill was allowed by the common council and a warrant directed to be issued for its payment out of the police funds. It would have been approved by the mayor and all the city officials, except for the bringing of this action and enjoining the defendants.
The contention on the part of the plaintiff is to the effect that the city of Buffalo has no power under its charter or as a municipal corporation to pay for those legal services; also, that if Newell was entitled to aid from the city it could only be granted for services rendered by the city attorney, and that lie was not employed by Newell or rendered any legal service in defending the action.
The defendants’ position is that Newell was an officer and agent of the city of Buffalo; that it was his duty to act in the capacity and discharge the duties of police commissioner in behalf of the city ; that if he had failed to defend the action brought to oust him he would have been removed although entitled to hold the office; that a neglect to' defend would have been a breach of duty to the city and a violation of the obligations lie had assumed when he accepted the office; that having good title to the office he would violate his trust in neglecting to defend it, and that upon his title being judicially established it was not only within the power of the city, but its duty, to fully indemnify him for the expenses necessarily incurred in protecting the rights of the city to his services’ as police commissioner; that it was entirely immaterial what attorneys performed the services assuming they were proper and necessary. It is agreed that the sum of $500 was a proper and reasonable charge. The city appears by its attorney in this action, and in its answer alleges, in substance, that Day & Homer’s bill should be paid. It appears by the pleadings and evidence that the common council and all the officials representing the city favor its payment, which would have been made except for this action.
It is a general rule that municipal corporations have full *339 power to act in reference to all matters in which they have an interest except so far as restrained by constitutional limitations (Le Couteulx agt. City of Buffalo, 33 N. Y., 333 ; City of Buffalo agt. Bettinger, 76 N. Y., 393; Albany City National Bank agt. City of Albany, 92 N. Y., 363; The Board of Supervisors Orleans Co. agt. Bowen, 4 Lans., 24; Meech agt. City of Buffalo, 39 N. Y., 198; Davies, Mayor, &c., agt. City of New York, 83 N. Y., 297.) Newell was an officer and agent of the city of Buffalo (The People agt. Vilas, 36 N. Y., 459). Important duties were imposed upon him by the office he had accepted, which it was his duty to discharge. So far as appears, he was entirely competent and willing to perform them; that he desired to do so. A failure to defend the quo warranto action would have resulted in his removal. The people in this case challenged his title; the duty therefore devolved upon him to prove affirmatively his right to hold and discharge the duties of the office. The rule would be otherwise if the action had been brought in behalf of another claimant (People ex rel. Judson agt. Thacher, 55 N. Y., 525).
Section 37 of the charter provides for raising money for the ■expense of the police board, also for necessary legal expenses “ and all expenses which may necessarily be incurred by reason of any civil or criminal action or proceeding against the police commissioners or either of them, or against any member of the police force for acts done in the discharge of his or their duty.” It was the duty of Newell to act as police commissioner. It was because he so acted that the action was brought. If upon the trial of the action against Newell it had appeared that his acts as police commissioner were unauthorized because he was not a citizen, then it is very clear that he would not be discharging his duty in assuming to exercise the functions of the office.
Section 37 prescribes the duties of the city attorney with reference to actions brought against the police commissioners. There are no negative words in the charter limiting the power. of the city to the expenses ’ affirmatively provided for; nor *340 does the charter prevent the city from employing any lawyers it chooses in litigations affecting it or its rights.
It is a general rule that in the absence of words of limitation or restriction, rights or remedies which existed before the passage of a statute are not taken away (Truman agt. Richardson, 68 N. Y., 617; People agt. Hall, 80 N. Y., 117; Candee agt. Hayward, 37 N. Y., 653.)
It is an established rule that a municipal corporation may indemnify its officers and agents for expenses necessarily incurred in the bona fide discharge of their duties (Roper agt. Town of Launburg, 90 N. C., 427; 30 Abb. L. C., 303 ; 1 Dill. Mun. Corp., sec. 98; Haddsell agt Inhabitants of Hancock, 3 Gray, 527; Babbitt et al. agt. Selectmen of Savoy, 3 Cush., 530 ; Bancroft agt. The Inhabitants of Lynfield, 18 Pick., 566; Cooley’s Const. Limitation [5th ed.], 258).
The expenses incurred by ¡Newell in preventing his unlawful removal from the city office which he held- were necessary; they were also incurred in the discharge of his duty. Section 5, chapter 359 of the Session Laws of 1883, provide for the filling of vacancies in the board of police, and. also provides that they may be removed from the office by the superior court of Buffalo for neglect of duty, malfeasance in office, bribery or corruption; but no removal shall be made'unless upon charges, or unless the party shall have been served with a copy of the charges and have an opportunity to be heard and present evidence in his own behalf. The statute carefully protects the rights of the city to his services, also his own rights by providing he' shall not be removed except for cause. The legislature proceeds upon the assumption that the person sought to be removed is an officer ; the action against ¡Newell to remove him on the other hand was brought and carried on, on the assumption that he was not an officer and never had been.
"While it is true the action was not brought against him for any particular official act, it is equally true that its scope was much more comprehensive and sweeping. The essence of the *341 complaint was that he had no right to perform any official act; that he had intruded himself upon the people and was assuming to act as an official when in fact he was not an officer and had no right to act in that capacity. In short, every act was charged to be illegal and in violation of the rights of the people. The issue joined presented the single question as to He well’s right to act in an official capacity. His defense rested exclusively upon his title to the office which, of course, included his right to act in the performance of his duties. It is perfectly clear, therefore, that the reasons for indemnifying him in case he had title were quite as cogent as though he was sued for some official act, and no reason is perceived why the corporation has not full power to indemnify in such a case.
It may well be, when the people challenged his title to the office, the city might say: “ This challenge assumes that you are not an officer, therefore the city is not bound to defend your right to hold it against the people’s contention; it devolves upon you to prove affirmatively your title. If you succeed the city can then act as the occasion requires.”
He well, therefore, employed his own lawyers and established his title. The city, through its officers then said, in substance: The attack upon your title was without foundation and you shall be fully indemnified for the expenses necessarily incurred in establishing your right to the office.
It was, undoubtedly, the intention of the legislature to indemnify the officers and agents of the city for expenses incurred in the discharge of their duties. It is a familiar rule that statutes will be so construed as to attain the ends of justice (Engel agt. Fisher, 15 Abb. N. C., 72; People ex rel. Steiner agt. Morrison, 78 N. Y., 84).
But if the language of the charter is not sufficiently broad to include this case, still the authorities above cited clearly show that the city has power to pay this bill. Its right to indemnify its agents and officers in the discharge of their duties includes this case. When the judgment established his title the city ratified his acts m the employment of counsel *342 and assumed the expense. A subsequent ratification is equivalent to an original authority. Heerman agt. Clarkson (64 N. Y., 171); Hodges agt. Buffalo (2 Denio, 110); Gamble agt. Village of Watkins (7 Hun, 448), have no application. The first case is where an appropriation was made to an hotel keeper to pay the expenses of entertaining certain citizens; the other was where an appropriation was made to entertain a company of editors. The plaintiff’s argument in the last case was to the effect, that by liberal supply of provisions and incidents the editors would be induced to indulge in editorial puffs in favor of the village, which would amply repay it for its expenditures. The justices and county court took that view, but the supreme court took the liberty of saying “ that is not a duty for which the municipality was created.” It is obvious that if the supreme court could have been made to-see that the village of Watkins was created for the purpose of feasting editors, it would have reached the same conclusion as the courts below. .The question of double costs throws no-light upon this case.
In The People on the Relation of Morris agt. Adams (9 Wend., 464) the court held that a defendant in an action in the nature of a quo warranto is not entitled to double costs, for the reason that it was in the nature of a writ of right for the people against him who claims or usurps an office, franchise or liberty, to inquire by what authority he supports his claim in order to determine the right,” and was not, therefore, within the statute allowing double costs. The character of an action is determined "by the complaint (Walsh agt. Darragh, 52 N. Y., 590). The action against Newall was not brought “ for or concerning any act done by 'him by virtue of his office, or for or concerning the omission of any act which it was his official duty to perform.” On the other hand the action was brought to restrain and prevent him from doing any official act. ,The statute awarding double costs, therefore, has no application.-
The conclusion reached is that the city had authority to pay *343 the bill; that if the power was not expressly conferred by the charter it was inherent in the city as a municipal corporation within the limits and scope of its corporate powers.
The complaint must be dismissed on the merits, with costs.