(Champaign Co, O, Common Pleas.)

## C. W. MITCHELL'S ADMINISTRATOR v. BOARD OF COMMISSIONERS OF CHAMPAIGN COUNTY, O.

---

The statute passed April 10, 1896, (92 O. L., 136), for the suppression of mob violence, is unconstitutional.

---

On demurrer to petition.

C. W. DUSTIN, J., of Montgomery Co.

This action is brought to recover $5,000 from defendants, under the provisions of an act entitled: "An Act for the Suppression of Mob Violence," passed April 10, 1896, vol. 92, O. L., p. 136.

For the purposes of said act a mob is defined to be "any collection of individuals, assembled for any unlawful purpose, intending to do damage or injury to any one, or pretending to exercise correctional power over other persons by violence, and without any authority of

law;" and "any act of violence exercised by said mob upon the body of any person constitutes a 'lynching.'"

For the purposes of the act the term "serious injury" is defined. And parties injured may recover $500 for assault, $1,000 for serious injury, and $5,000 for permanent disability to earn a livelihood by manual labor.

Sec. 5, provides that "the legal representatives of any person suffering death by lynching at the hands of a mob in any county of this state, shall be entitled to recover of the county in which such lynching may occur, the sum of five thousand dollars damages for such unlawful killing."

There is a section also, providing that every judgment shall include an order upon the county commissioners to levy a tax to pay the same.

The petition sets forth in detail the circumstances attending the sentence of Charles W. Mitchell for a felony, and his unlawful seizure, while in the hands of the sheriff, by a mob, June 4, 1897, and avers that "by reason of said acts of violence, said Charles W. Mitchell suffered death by lynching at the hands of said mob, in the county of Champaign, aforesaid."

The defendants have demurred to the petition, for want of facts, for want of jurisdiction of the subject matter, and because the statute under which the action is brought is repugnant to and in violation of the constitution of Ohio and of the United States.

Some ten sections of the constitution, chiefly in the Bill of Rights, are cited as being contravened by the statute in question, but the argument centers about three propositions:

1st. That the statute deprives the defendant of the right of trial by jury, which is in violation of sec. 5, of art. 1, of the constitution, which says that "The right of trial by jury shall be inviolate."

2nd. That the statute is an attempted exercise of judicial power by the legislature, in violation of sec. 32, art. II, and sec. 1, art. IV, of the constitution; and

3rd. That it provides for taxation for private benefit, instead of public use, contrary to sec. 19 art. I, and sec. 5, art. XII, of the constitution of Ohio.

The articles of the constitution of the United States that are alleged to be contravened, are not cited in defendant's brief, but I assume that they are articles V, and VII, of the amendments, providing that no person shall be deprived of property "without due process of law," and that where the value in controversy exceeds twenty dollars, "the right of trial by jury shall be inviolate."

The statute in question being of recent enactment, and no statute with the same purpose in view having theretofore been enacted in Ohio, our Supreme Court has never been called upon to construe any of its provisions. A broad field is therefore open to argument, and counsel have not failed to avail themselves of the liberties and opportunities of the situation, and have presented their views from all possible standpoints; and I am much indebted to them for their elaborate briefs, showing wide research, much ingenuity and great learning in their preparation.

The questions involved are all constitutional, of the highest importance, and their settlement may have much influence on the peace and good order of society.

It is true that another section of the statute has been construed by the common pleas court of Cuyahoga county, in the case of Caldwell v. Board of Commissioners of Cuyahoga county, vol. 4, O. N. P. Rep., 249; and again in the Circuit Court of the same county. But as these decisions are not binding upon the courts of this county, and are only valuable in so far as they may be logical and well supported by other and higher authorities, I have endeavored to examine the questions without being biased thereby.

Taking up the questions presented in their natural order, the first would be, (without considering the special terms of this statute), "Has the legislature the right to pass a law making counties liable to individuals for personal injuries received from a mob?"

Sec. 1, of art. II, of the constitution, reads:

"The legislative power of this state shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives."

"It will be observed that the provision is not, that the legislative power, as conferred in the constitution, shall be vested in the General Assembly, but that the legislative power of this state shall be vested. That includes all legislative power which the object and purposes of the state government may require, and we must look to the provisions of the constitution to see how far, and to what extent, legislative discretion is qualified or restricted."

Gholson, J., in Baker v. Cincinnati, 11 Ohio St., 542; see also, Lehman v. McBride, 15 Ohio St., 573-591.

Defendants claim to have found restriction to the passage of such a statute in sec. 19, of art. 1, of the Bill of Rights, which provides that, "Private property shall ever be held inviolable, but subservient to public welfare."

They cite The City Railway Co. v. State, 49 Ohio St., 201, but it seems to me not to apply. The act in question in that case was held to be unconstitutional for an entirely different reason, and because it was in contravention of

sec. 2, art. XII, requiring property to be taxed by a uniform rate, etc., and the remarks of he learned judge in that case are not inconsistent with the view that this statute may provide a tax for the "public welfare."

The remarks of the same judge in Board of Education v. State, in 51 Ohio St., p. 539, are cited, and will be referred to hereafter, in this opinion, upon another question in the case; but, although they only amount to a dictum, they are so far from agreement with the views of the defendants herein, that they expressly concede "that the General Assembly may authorize on of the political subdivisions of the state to levy a tax, not legally enforceable, but founded upon a moral consideration, or may even command that a levy be made for that purpose." (See page 540.)

On the contrary, in the case of Darlington v. Mayor of New York et al., 31 N. Y., p. 164, "An act for compensating parties when property may be destroyed in consequence of mobs or riots," was declared constitutional. The same points were made in that case as in this, but Denio, Ch. J., a learned and eminent jurist, on page 187, says: "The policy on which the act is framed, may be supposed to be, to make good, at the public expense, the losses of those who may be so unfortunate, as without their own fault to be injured in their property by acts of lawless violence of a particular kind, which it is the duty of the government to prevent, and further, and principally, we may suppose to make it the interest of every person liable to contribute to the public expenses to discourage lawlessness and violence, and maintain the empire of the laws established to preserve public quiet and social order. These ends are plainly within the purposes of civil government, and, indeed, it is to obtain them that governments are instituted: and the means provided by this act seem to be reasonably adapted to the purposes in view."

The learned judge then proceeds to give a history of similar legislation, showing that it has been in existence in England for a thousand year, citing a law of King Canute, holding the village liable in case a murder was committed within its bounds and the slayer escaped. Similar statutes existed under the reign of the Norman Kings and Queen Elizabeth, George I and George II, and the policy of compelling a local community to answer with their property for acts of violence committed by others, has been considered by the English Parliament as a supplement to, rather than a violation of, the Great Charter.

Farther on the judge says: "When the state undertakes to indemnify the sufferers from riots, the executing of that duty (viz., the raising of the

amount by taxation) is a public concern, and the expenditure is on public account." It is a public use in the same sense as the expenditure of money for the erection of court houses and jails, the construction of roads and bridges and the support of the poor. It is taken for an object which the legislature has determined to be of public importance and for the interest of the state." This is a leading case, involving important interest, and the decision of the court is exhaustive and at great length.

Similar statutes have been held constitutional in Pennsylvania and Louisiana.

Allegheny Co. v. Gibson, 90 Pa. St., 76; Williams v. New Orleans, 23 L. Am., 507; and have been unquestioned in New Hampshire, Kansas, Alabama and California.

45 N. H., 214; 9 Kan., 315; 46 Ala., 118; 55 Cal., 322.

The statutes considered in these cases, except in Kansas and Alabama, have been for the recovery of damages for injuries to property. In Kansas and Alabama the statutes provide for damages for injuries to persons.

In Underhill v. Manchester, 45 N. H., 221, the purpose of the statute is very well stated, as follows:

"The object of the statute, evident in itself, as well as shown by the history of similar laws, is to prevent and suppress riots. The course taken is first and chiefly punitive, in making the loss of property destroyed by mobs a charge upon the town treasuries, thereby joining the personal interest of the tax-payers with the official duty of the local authorities, and arraying both against violators, with a new motive to discover, discourage, over-awe and over-power, all riotous proceedings and tendencies; secondly, remunerative, in encouraging every one to oppose mobs by giving indemnity for property destroyed in consequence of efforts to preserve order. The act is not founded solely upon the theory of insurance, with taxes as premiums. The end to be accomplished is not merely compensation for loss, but prevention of loss, with compulsory compensation as the incentive means."

The alleged unwisdom and injustice of the statute has been much commented on by counsel, and its liability to abuse, by collusion between two or three persons who might assume to be a mob, assault one of their own confederates, who would sue the county for $500 and divide the proceeds with his friends, the assailants, who composed the alleged mob.

It is not the province of courts, it seems to me, to consider the wisdom or expediency of the law, but to examine its form, determine if possible its purposes, and decide whether or not it is valid and constitutional. It is for the legislature to determine as to its

wisdom, necessity, or expediency, which is not for the courts to gainsay. But in this case, which so intimately concerns the administration of justice, the legislature may well be commended for its attempt to aid the dignity and power of the law, and to insure its respect.

It is humiliating, perhaps, to realize that in the commonwealth of Ohio, so advanced in education and civilization, such a law should be deemed necessary, but the country has lately been so startled by lynchings and burnings, especially, throughout the South, that I doubt not the legislatures of many states will soon enact similar laws to the one in question. Some such repressive measures seem to be necessary, to make communities realize that the safety of the innocent as well as the punishment of the guilty, require complete submission to the law: that if a wild mob is to determine whether or not a penal law is sufficiently punitive, and assume the duties of organized courts, which may be considered by them in their frenzy as too lenient or too dilatory, then the next step is anarchy, and the next chaos, and the community would soon be in a whirl of unrest, with no dominating power but brute force. The slightest departure from the path of safety is like allowing a rivulet to trickle over the dikes of Holland. The least concession to lawlessness, no matter what the provocation, is a weakening of the foundations of society.

In passing from savagery to civilization, we have yielded the individual right of executing retributive justice to the state, and there it should remain, even though in exceptional instances the state may fall far short of our ideas of a just retribution.

It seems to me, therefore, that a law having for its purpose the suppression of mob violence, even though in its operation it provides for a tax upon innocent citizens, is a law for the public welfare and that the tax would be legal.

The next question is: Has the legislature in this statute attempted an exercise of judicial power, in violation of sec. 32, art. II, and sec. 1, art. IV, of the constitution?

From the foundation of our government until now, it has been the purpose of the constitutions, state and federal, to keep the three co-ordinate branches of government, the executive, legislative and judicial, distinctly separate. Encroachments of the one upon the other have been watched, and guarded against, with extreme jealousy. If the courts attempt to legislate by construing statutes contrary to the manifest intent of the legislature, or, if the legislature attempt to decide controversies between man and man, and thus usurp the province of the courts, or, if the executive attempts, with a high hand, to assume the functions of either or both the other branches, there is an immediate and just protest and resistance. If the distinction between the branches is broken down, so that they are no longer a check upon each other, then the government will be working at cross purposes, and the only relief will be in a monarchy, where the ruler combines the powers of the three branches. In our present form of government the legislature has no more right to assume the prerogatives of the courts than has a mob.

It is claimed that in the statute under consideration the legislature has encroached on the prerogative of the judicial branch of government in this, that it assumes to fix and determine the amount of damage sustained by the next of kin of a deceased person, by reason of his death at the hands of a mob, thus varying and ignoring the rules of law which require that such issues of fact should be submitted to a jury for determination, under the instructions of a court and the usual forms of trial.

There is a statute in Ohio limiting the amount of recovery in case of death by wrongful act to the sum of $10,000. The constitutionality of that act has not been questioned, for it has been conceded that the legislature, on the grounds of public policy, may limit the maximum recovery. But it does not pretend to fix the minimum. It is left for a jury to say, considering the age, health, occupation and earning capacity of the man, what his life was worth to his next of kin, for which a verdict may be awarded not to exceed $10,000.

The legislature, of course, knew that the lives of all men liable to be killed by mobs would not be worth $5,000 each to their next of kin. Some might be worth more, but many would doubtless be worth less on account of age, infirmities, dissolute habits and small earning capacity.

To the extent, therefore, that in any case where the loss to the next of kin may be less than $5,000, the legislature has provided for a donation of the difference between the real loss and the sum of $5,000, and authorizes a levy for its payment. In other words, the statute provides not only for compensatory damages in all cases, but for gratuities in many of them. In all cases (except one) to which I have referred, in which statutes having a similar purpose in view were held to be constitutional, there was provision only for compensatory damages, and the amount recoverable was not fixed and determined except in one instance, in Alabama, and in that case the point here raised seems not to have been suggested at all, and the court makes no allusion to it. So, I think I am safe in saying, that nowhere in this country except in the Alabama case referred to, has such a law been

held to be constitutional, where the amount recoverable was fixed, and that such a provision makes it invalid and unconstitutional, unless it is saved by the holding of our Supreme Court in the case of Railway Co. v. Cook, 37 Ohio St., p. 265.

The action in that case was based upon the statute (71 O. L., 146), compelling a railroad company which over-charged to pay the aggrieved party a sum double such over-charge, but in no case to be less than $150. The plaintiff was over-charged five cents in two instances, and recovered $300. The railroad company made the point that the legislature had exceeded its powers, and had deprived the defendant of the right of trial by jury, etc. The Supreme Court overruled the objections, and sustained the judgment of the court below.

Upon this holding the plaintiff in this case chiefly relies, but it seems to me that there is a manifest distinction between the two statutes. In the railroad case the judgment authorized for the excessive damage was a penalty assessed against the guilty party, a private corporation, a creature of the legislature, for disobedience of the provisions under which it was allowed to operate. In this case the statute provides not for a judgment against the guilty individual or private corporation, but against a board representing a political sub-division, a county, the payment of which judgment requires a levy upon the property of all persons within the county, the guilty and the guiltless; and a levy, as we have seen, can only be for public use and welfare; and, following the precedents cited, can be compensatory only.

The view that this law is unconstitutional, for the reason that it is an encroachment of the legislative upon the judicial branch of government, and by its terms necessarily deprives the defendants of the right of trial of material and disputed facts to a jury, and subjects them to the loss of property "without due course of law," I think is sustained by Hanson v. Vernon, 27 Iowa, 28; Board of Education v. State, 51 Ohio St., 539; Ervine's Appeal, 16 Pa. St., p. 257; Ponder v. Graham, 4 Fla., 23; Caldwell v. Board of Com'rs., 4 O. N. P. Rep., 249.

Upon consideration of the whole matter, therefore, I am of the opinion that the statute is unconstitutional, and the demurrer to the petition will be sustained.