## THE PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* FRANK LIVINGSTON *v.* ROMUALDO PACHECO, TREASURER OF STATE.

TRANSFER OF MONEY BY TREASURER OF STATE.—The Treasurer of State could not, prior to January 1st, 1865, transfer to the General Fund any money in the fund created by the Act of April 4th, 1864, providing for the sale of lands for the relief of the volunteers of this State enlisted in the service of the United States.

IN WHOSE NAME WRIT OF MANDATE MUST BE APPLIED FOR.—An application for the writ of mandate must be prosecuted in the name of the real party in interest, and if the name of the people is used, and the people have no interest, and the relator alone is interested, the writ will be denied.

WHO AUTHORIZED TO APPEAR FOR THE PEOPLE IN THE SUPREME COURT.—The Attorney-General is the only person authorized to appear for the people in the Supreme Court, and a private person cannot at his election use the name of the people to obtain redress for private wrongs.

THIS was a proceeding commenced in the Supreme Court to procure a writ of mandate.

The other facts are stated in the opinion of the Court.

*H. & C. McAllister,* for Relator, argued that the people were the real parties in interest, because the special tax levied by the Act is paid by the people, who have thus a direct pecuniary interest in the proper application of the proceeds as well as an interest in the proper discharge of the duties of the Treasurer, and cited *The People* v. *Bell,* 4 Cal. 179 ; *The People ex rel. Hepburn* v. *Whitman,* 6 Cal. 659 ; *Mulford* v. *Mayhew,* 26 Cal. 665 ; *People ex rel. Dorsey* v. *Smyth, County Auditor,* 28 Cal. 21 ; *The People ex rel. Central Pacific R. R. Co.* v. *Board of Supervisors of San Francisco.* 27 Cal. 665 ; and *The People ex rel. Carpentier* v. *Loucks, County Clerk,* 28 Cal. 68.

*J. G. McCullough, Attorney-General,* for Respondent, argued that mandamus was a civil remedy, like any other action, and that under our practice there was no reason why the name of the people should be used, unless they were interested, and in the present case Livingston alone was interested, and cited Practice Act, Secs. 4 and 468; *Tyler* v. *Houghton,* 25 Cal. 26; *Sawyer* v. *County Commissioners,* 25 Maine, 291, *Brown* v. *O'Brien,* 2 Carter, Ind. 431; and *Summers* v. *Farish,* 10 Cal. 351.

By the Court, RHODES, J.

The relator purchased from the State forty-five bonds, each for the sum of one thousand dollars, issued under the Act entitled " An Act granting bounties to the volunteers of this State enlisted in the service of the United States, for issuing bonds to provide funds for the payment of the same, and to levy a tax to pay such bonds," approved April 4th, 1864. (Stats. 1864, p. 486.)    Those purchased by the relator, were all that were sold under the Act, up to the time of the commencement of this action.    The bonds were sold at private sale, on the 23d day of December, 1864, for eighty-eight per cent, but interest did not begin to accrue on the bonds previous to the 1st day of January, 1865, because the coupons for the semi-annual interest to fall due at that date, were cut off and cancelled by the Board of Bounty Commissioners, at the time of the sale and delivery of the bonds.  On the 31st day of December, 1864, there was the sum of forty-eight thousand forty-seven dollars and seventy cents in the Interest and Redemption Fund provided for in section fifteen of the Act, and on that day, the Treasurer transferred forty thousand dollars from that fund to the General Fund in the State Treasury.   The relator now seeks by mandamus to compel the Treasurer to return to the Interest and Redemption Fund the amount transferred by him to the General Fund, and to proceed to the redemption of the bonds according to the directions contained in the Soldiers' Bounty Act.

The answer denies that the people are the real parties in interest; or that the relator has any authority from them or the Attorney-General to use their name in this proceeding; or that they are jointly interested with the relator in the proceeding or the subject matter thereof; and he avers that the transfer of the funds was made by authority of the Soldiers' Bounty Act. The other matters in the answer do not require any notice, as the parties stipulated that the cause be submitted for decision upon the facts alleged in the petition, with the admission that the coupons for the interest to accrue January 1st, 1865, were cut off and cancelled, as has been mentioned, and that no other of the bonds were sold, besides the forty-five bonds sold to the relator.

There can be scarcely a question, that the Treasurer could not lawfully transfer the funds at the time he performed that act. The provision of the Act on that subject, as found in section eighteen, is as follows: " And in case there should at any time be in the fund created by this Act, for the payment of said interest and the redemption of said bonds, any surplus moneys not needed for the payment of said interest or the redemption of any bonds, it shall be the duty of the Treasurer of State to transfer such surplus moneys to the General Fund of this State." In section nine it is provided that the first payment of interest should not be made sooner than the 1st day of January, 1865. It thus appears that the time for the making of the transfer could not arrive previous to that day. It was doubtless expected by the Legislature that interest would accrue on that day upon bonds that might have been previously sold, and in that view no provision was made for a transfer of the funds until after the several times for the payment of interest had passed; and although, according to the facts appearing in this case, no interest could fall due on the 1st day of January, 1865, yet the Act has not permitted the Treasurer, for that reason, to make an earlier transfer of the funds.

*A private person cannot use the name of the people to obtain redress for private wrongs.*

But, conceding that the transfer was prematurely made, it does not necessarily follow that the relator is entitled to the relief he seeks. The Treasurer, through the Attorney-General, who appears for him, makes the points that the relator is the real party in interest, and that, therefore, the proceedings should have been brought in his name; and that if the people are the proper parties to prosecute the action, the relator has no authority to use their name. Upon an analysis of the pleadings, it is apparent that the relator is the only person who will suffer an injury in consequence of the premature transfer of the funds. If any injury will accrue therefrom to the people, the relator has failed to state any facts showing how it will accrue. On this point the provision of section four of the Practice Act, that " every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this Act," is applicable ; and it is also provided, in section four hundred and sixty-eight, relating to mandamus, that the writ " shall be issued upon affidavit on the application of the party beneficially interested." But, considering the action as brought on behalf of the people as the real party in interest, then the relator is met by the provisions of section two of the Act concerning the office of Attorney-General, that " the Attorney-General shall attend each of the terms of the Supreme Court, and there prosecute or defend, as the case may be, all causes to which the State may be a party," etc. The Attorney-General is the only person to whom authority is given by law to appear for the people in this Court, and he, or such person as he may delegate authority to, to appear in his name, must represent them in each stage of a proceeding in this Court ; but in this cause the Attorney-General not only does not represent the people, but he appears against them. A private person has not the right or power to use at his election, the name of the people for the purpose of obtaining redress for private wrongs.

The objection of the defendant is well taken.
Petition denied.

Mr. Chief Justice SANDERSON expressed no opinion.