## STODDARD, TREASURER, V. BENTON.

1. When the writ of *mandamus* is invoked for the protection of a purely private right, by the individual aggrieved, the proceedings may be conducted in the name of the actual parties in interest.

2. The law is well settled, that, after notice to the judgment debtor of a *bona fide* transfer of the judgment, the rights of the assignee will be protected from any and all acts of the parties.

3. In pleading the assignment of a judgment it is not necessary to aver that the assignment was under seal.

4. The assignment of a judgment, or other chose in action, does not come within the rule governing general assignments for the benefit of creditors, and the reservation by the assignee of a balance remaining after payment of a creditor does not render the transaction fraudulent.

5. The object of notice of the assignment of a chose in action is to inform the debtor that his creditor has divested himself of the right to collect the demand, and invested his assignee with the right.

6. If a chose in action has been assigned, and a party deals with the assignor concerning the subject matter of the assignment, knowing that his right of disposition has been divested, no presumption of law can arise to aid such subsequent purchaser. If the fact exists that the assignor has become reinvested, it should be made to appear affirmatively. The presumptions are in favor of the assignee.

7. The authority to issue county orders and warrants and to pay out county money is a statutory one.

8. While a county warrant is to be signed by the chairman of the board of county commissioners, and also to be signed and attested by the clerk, yet the power to issue a county warrant is vested alone in the board of commissioners and can be only exercised at a meeting of the board.

9. A warrant drawn and signed without any action of the board is a nullity in the hands of any one chargeable with notice of the irregularity, and in an action against the county treasurer to compel payment, he may allege in his defense the facts which show the warrant to be void.

10. The statute (General Laws 1877) seems to contemplate that before a county treasurer is authorized to pay a judgment against the county, in either of the ways mentioned in section 435, the board of county commissioners shall take some action in the matter.

11. It is for the board to determine how far the county will defend against a claim which has been prosecuted to judgment.

12. If no appeal is perfected or *supersedeas* allowed, provision must be made for payment of the judgment. This may be done by levy of a tax or a warrant upon the county treasurer. In case of delay or refusal to make provision for payment, *mandamus* will lie.

*Appeal from District Court of Ouray County.*

THE facts are stated in the opinion.

Mr. W. STORY and Messrs. GEORGE, MAXWELL and PHELPS, for appellant.

Messrs. FRANCE and ROGERS, for appellee.

BECK, C. J. This was an application by the appellee Benton to the district court of Ouray county for a writ of *mandamus* to compel the appellant, as county treasurer of said county, to pay a county warrant alleged to have been issued by the board of county commissioners.

The warrant was drawn payable to C. P. Goss, or bearer, in payment of a judgment against the county, and bears date January 14, 1880.

The petition alleges that Benton is and has been the legal holder thereof ever since the 15th day of June, 1880. That Treasurer Stoddard had paid a portion of the warrant, but that on the 28th day of September, 1880, the appellee demanded payment of the balance due thereon, and that although there was money in the defendant's hands applicable to its payment, unappropriated, he refused to pay any portion of the amount due thereon.

The substance of the answer is that the warrant was not issued by the county commissioners, but by George A. Scott, its chairman, and the deputy clerk of the board, without any action having been taken by the board of county commissioners in the matter. It alleges that Goss recovered a judgment against the board of county commissioners on the 9th day of July, 1878, for the sum of $834.50 and costs of suit, which judgment Goss, on the 11th day of August, 1879, assigned, for a valuable consideration, to Adelbert Parsell, sheriff of Ouray county, and his successor in office, in trust, to pay out of the proceeds, when collected, to Ira Y. Munn, his heirs and assigns, the sum of $350, without interest, and to pay the balance of the judgment and all the interest to said Goss.

Notice is alleged to have been given the board of county commissioners and to Scott, the chairman, of the assignment of the judgment before the warrant was drawn. It is averred that the sole and only consideration for the warrant was the said judgment, and that Benton

had full knowledge of the assignment of the judgment, and that the warrant was issued without lawful authority, before he purchased the warrant.

The answer further alleges that on the 10th day of July, 1880, the board of county commissioners, at a meeting held on that day, made an order, and caused the same to be served on the appellant, setting out the irregularities of the warrant issued to Goss, and the previous assignment of the judgment to Parsell, and directing him to pay the judgment to Parsell.

On motion of the plaintiff the court struck out from the treasurer's answer all the new or affirmative matter, and refused to permit him to prove the facts therein alleged on the trial.

Judgment was rendered for the plaintiff, awarding the peremptory writ of. *mandamus* to issue against the defendant, as county treasurer of Ouray county, commanding him forthwith to pay the balance unpaid upon the warrant.

The proceeding was instituted in the name of the appellee, and on the part of the appellant it is urged that this was irregular, and that the action cannot be maintained in this form. It is insisted that the proceeding must be prosecuted in the name of the people, upon the relation of the party aggrieved.

We are of opinion that this point is not well taken. The provisions of our Civil Code upon the subject of *mandamus* are almost identical with those of California. It is there held that a private person has not the right or power, at his election, to use the name of the people for the purpose of obtaining redress for private wrongs. When a private individual is the real party in interest, the code provisions are held to govern, that the writ "shall be issued upon affidavit on the application of the party beneficially interested;" and that "every action shall be prosecuted in the name of the real party in interest," etc.

Another reason assigned for the ruling is, that the attorney general is required by statute to attend each term of the supreme court, and prosecute, or defend, as the case may be, all causes to which the state may be a party. *People v. Pacheco*, 27 Cal. 213. It seems, however, that if the attorney general assents to the use of the name of the people, the proceeding will not be dismissed when instituted in that form, for the reason that it seeks redress for private wrongs. *People v. San Francisco*, 36 Cal. 595. *Mandamus* being a civil remedy, given for the protection of civil rights, public and private, the position appears to be a sound one, that when the writ is invoked for the protection of a purely private right, by the individual aggrieved, the proceedings may be conducted in the name of the actual parties in interest.

The other errors assigned present two principal questions for consideration and decision: *First*, whether there was a valid assignment of the judgment by Goss to Parsell. *Secondly*, the regularity of the issuance by the chairman and clerk of the board of county commissioners to Goss, of the county warrant, in payment of the judgment.

If the facts pertaining to the assignment of the judgment, and to notice, set out in the answer were sufficient to show a valid assignment, and due notice thereof, the court erred in striking out those portions of the answer.

The law is well settled, that, after notice to the judgment debtor of a *bona fide* transfer of the judgment, the rights of the assignee will be protected from any and all acts of the parties. *McJilton v. Love*, 13 Ill. 486; *Hughes v. Trahern, Adm'x*, 64 Ill. 48; *Fore v. Manlove, Sheriff*, 18 Cal. 437; Freeman on Judgments, sec. 421.

So far as the alleged notice is concerned, the allegations were clearly sufficient. The answer averred notice to the treasurer and to the county commissioners, long before the warrant was issued to Goss, that the judgment had been assigned. It also averred notice to Benton, the

plaintiff below, of the assignment of the judgment, and of the invalidity of the warrant, before he purchased the warrant from Goss. The answer averred that the judgment was assigned for a valuable consideration, and this averment was sustained by the written assignment admitted in evidence. The admission of an indebtedness by Goss to Munn, coupled with the written direction to the assignee to pay the same out of the judgment, was a sufficient consideration, *prima facie*, to sustain the assignment.

It was not necessary to aver, as counsel contend, that the assignment was under seal. *Mitchell v. Hackett et al.* 25 Cal. 538; *Ford v. Stuart*, 19 Johns. 342.

The fact that the assignee was required to collect the judgment, and, after satisfying the claim of Munn, to pay over the balance of the judgment, and all interest which had accrued, to the assignor, would not of itself invalidate the assignment. Where a general assignment is made, for the benefit of creditors, of all the property and effects of the debtor, the authorities agree that a reservation of any portion of the fund arising therefrom, to the exclusion of creditors, renders the assignment void. But the assignment of a judgment, or other chose in action, does not come within the rule governing general assignments for the benefit of creditors, and the reservation, by the assignor, of a balance remaining after payment of a creditor does not render the transaction fraudulent. *Beach et al. v. Bestor et al.* 47 Ill. 521.

In respect to the point urged, that the judgment was assigned as security, and that we must presume that the assignee would not assume to deal with the matter unless the security had been discharged, we do not think the position a sound one. The object of notice of the assignment of a chose in action is to inform the debtor that his creditor has divested himself of the right to collect the demand and invested his assignee with that right. Wade on the Law of Notice, secs. 435, 436.

When, therefore, a chose in action has been assigned, and a party deals with the assignor concerning the subject matter of the assignment, knowing that his right of disposition has been divested, no presumption of law can arise to aid such subsequent purchaser. If the fact exists that the assignor has become reinvested of the thing assigned, the fact should be made to appear affirmatively. The presumptions are in favor of the assignee.

A valid assignment of the judgment being shown, with notice to the county commissioners and to the plaintiff, Benton, Goss would have no further control of the judgment, the county commissioners no authority to issue to Goss a warrant in payment of it, and Benton would take nothing by the assignment of such a warrant.

We will now consider the errors assigned which question the regularity of the warrant.

The answer of the county treasurer avers, as we have before stated, that George A. Scott, who was then the chairman of the board of county commissioners of Ouray county, assuming to act as such chairman, with notice of the assignment of the judgment, and without any action whatever having been taken by the board of commissioners upon the claim of Goss, drew and signed the warrant, and that it was attested by W. E. Block, who claims to act as deputy county clerk of said county.

Another paragraph of the answer avers that the sole pretext and consideration for drawing the warrant was the judgment previously recovered by Goss against the county.

The authority to issue county orders and warrants is a statutory one. The authority to pay out county money is also derived and regulated by statute. The following statutory provisions relate to these subjects:

"The powers of a county as a body politic and corporate shall be exercised by the board of county commissioners thereof." General Laws 1877, sec. 430.

"The board of county commissioners of each county

shall have power, at any meeting, * * * to examine and settle all accounts of the receipts and expenses of the county, and to examine and settle and allow all accounts chargeable against the county, and when so settled they may issue county orders therefor as provided by law." Id. sec. 446.

"The chairman of said board * * * shall sign all county orders." Id. sec. 461.

"County orders shall be signed by the chairman and attested by the clerk, and shall specify the nature of the claim or service for which they were issued." Id. sec. 463.

"The county clerk shall be, in and for his county, clerk of the board of commissioners." Id. sec. 479.

"It shall be the duty of the clerk of the board of commissioners to * * * sign all orders issued by the board for the payment of money." Id. sec. 469.

The following section provides for the payment of judgments recovered against a county:

"When a judgment shall be rendered against the board of county commissioners of any county, or against any county officer in an action prosecuted by or against him in his name of office, when the same shall be paid by the county, no execution shall issue upon said judgment, but the same shall be levied and paid by the tax as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor; provided, that nothing in this section shall prohibit the county commissioners from paying such judgment by a warrant upon the county treasury." Id. sec. 435.

The duties of the county treasurer in regard to paying out county money are thus defined:

"* * * All moneys received by him for the use of the county shall be paid out by him only on the orders of the board of commissioners, according to law, except

where special provision for the payment thereof is or shall be otherwise made by law." Id. sec. 531.

It is clear from the foregoing statutory provisions that while a county order or warrant is to be *signed* by the chairman of the board of county commissioners, and also to be *signed* or *attested* by its clerk, yet that the power to *issue* a county order or warrant for any purpose is vested alone in the board of commissioners, and that it can only be exercised at a meeting of the board.

If, therefore, an order or warrant be drawn and signed without any action by the board of county commissioners, as is alleged to be the fact in the case under consideration, it is a nullity in the hands of any party chargeable with notice of the irregularity.

It is said in argument that the new matter stricken out of the answer of the county treasurer was matter in which he was not connected or concerned, but concerning persons not connected with the suit, and that he could not bring to his defense matters in which he was in no way interested or concerned.

It is a remarkable proposition that a county treasurer, bound by his oath of office and by his bond to obey the law in the discharge of his official duties, one of which is to pay out the county money only on the orders of the board of county commissioners, made according to law, except where special provision has otherwise been made by law for its payment, is compelled to pay a warrant which he knows to have been made in plain violation of the statute; and that in case of his refusal, and of a suit brought against him in his official capacity to compel him to pay the same, he has not sufficient interest or concern in the subject matter to allege in his defense the facts which show the warrant to be void. The proposition is untenable.

The warrant in question purports, on its face, to be issued to Goss in payment of a judgment. The statute

seems to contemplate that before a county treasurer is authorized to pay a judgment against the county in either of the ways mentioned in section 435, that the board of county commissioners shall take some action in the matter.

It is for the board to determine how far the county will defend against the claim which has been prosecuted to judgment against it. *Bank of California v. Shafer*, 55 Cal. 322. If no appeal is perfected, or *supersedeas* allowed, provision must be made for the payment of the judgment. This may be done either by the levy of a tax, or by a warrant upon the county treasury. In case the commissioners delay, or refuse to make provision for payment, a writ of *mandamus* will lie to compel them to act. *Alden v. County of Alameda*, 43 Cal. 270.

According to the answer, as filed, no warrant was ever issued by the board of county commissioners upon the county treasury in payment of this judgment, but on the contrary, the board, on the 10th day of July, 1880, at a meeting held on that day, took such action in respect to the matter as amounted to an order to the treasurer not to pay the warrant previously drawn by its chairman and clerk.

The defense was a proper one and should have been allowed.

The judgment is reversed and the cause remanded.

*Reversed.*