WHEELER v. NORTHERN COLORADO IRRIGATION COMPANY.

1. Under the constitution the principal jurisdiction of the supreme court is first appellate, and second superintending. But there is also conferred upon it a limited original jurisdiction.

2. The phrase, "and other original and remedial writs," in section 3, article VI, of the constitution, includes writs belonging to the same class as those specifically named in said section.

3. All of the writs referred to in said section 3, save the writ of injunction, were prerogative writs of the common law, and the writ of injunction as therein provided for is made a *quasi* prerogative writ.

4. Some of the writs mentioned, including *mandamus*, have been largely shorn, in this country, of their prerogative character. But original jurisdiction over these writs should be taken by this court only in cases involving questions *publici juris*, and the writs from this court should in general be put only to prerogative uses. Except in cases presenting some peculiar exigency they should only issue when the interest of the state at large is directly involved, and where such interest is the principal and not a collateral question.

5. Cases where these writs issue from this court should be brought in the name of the people, and it is the better practice that they be instituted by the attorney-general, or with his consent, or that his refusal to act or to consent be shown.

ORIGINAL proceeding for *mandamus.*

Upon the petition presented, an alternative writ issued by order of the court. The matters averred in respondent's return thereto constitute, in legal effect, a special demurrer, and in ordinary actions would doubtless be pleaded as such. All facts essential to a correct understanding of the opinion are sufficiently stated therein.

Messrs. WILBUR F. STONE, L. C. ROCKWELL and THOMAS MACON, for plaintiff.

Messrs. HUGH BUTLER, A. B. McKINLEY and T. D. W. YONLEY, for defendant.

HELM, J.   The authority of this court to entertain the original proceeding before us is vigorously challenged by counsel for the respondent company. This objection gives rise to the most perplexing question now presented for adjudication.

Sections 2 and 3, article 6, of the state constitution read as follows:

" Sec. 2.   The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law.

" Sec. 3.   It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari*, injunction, and other original and remedial writs, with authority to hear and determine the same."

To these constitutional provisions we must look for the jurisdiction of the supreme court.   In no other part of that instrument is there anything else specifically relating to this subject.   It is wholly immaterial whether we regard the language quoted as designating grants of power, or whether, with counsel for relator, we say that a part thereof constitutes a limitation of power; for, in either event, the court possesses only the jurisdiction that is expressly mentioned or necessarily implied.

Let us briefly analyze these extracts from the constitution.

Section 2 treats of two subjects: *First*, the appellate jurisdiction of the court; and, *second*, its general superintending control over inferior courts.   This section un-

doubtedly defines the principal power and authority which the framers of the constitution intended this tribunal to exercise. As the head of the judicial system of the state, it was eminently appropriate to confine its jurisdiction to a review of causes and proceedings determined by inferior courts, and to a superintending control over such courts. The general intention clearly was to leave with the subordinate courts of the state the first or original jurisdiction of controversies, whether relating to purely private rights or whether involving the consideration of questions pertaining to the public welfare. But, for excellent reasons, it was deemed necessary that this court should, nevertheless, possess a certain limited original jurisdiction. Such jurisdiction is designated in section 3. It is contended by one of the counsel for respondent that the power to issue the writs there mentioned was conferred solely to promote the efficient exercise of the authority given in the preceding section; that these writs are only to be used in aid of the appellate jurisdiction or in effectuating the general superintending control over inferior courts.

This position we consider untenable for the following reasons: *First.* Section 2 itself, by the declaration that the jurisdiction shall be appellate only, " except as otherwise provided in this constitution," implies the conferring of some independent *original* jurisdiction. *Second.* At least two of the writs designated in section 3 cannot be used in aid of appellate jurisdiction, nor are they appropriate to the exercise of a superintending control over inferior courts. *Third.* The appellate jurisdiction and the superintending control, each, without any express provision on the subject, carries with it authority to issue all writs appropriately connected with the proper performance of the duties imposed. It is an established doctrine that one of the essential attributes of appellate jurisdiction, and one of the inherent powers of an appellate court, is the right to make use of all writs known to

the common law, and, if necessary, to invent new writs or proceedings in order to suitably exercise the jurisdiction conferred. *Attorney-General v. Railroad Cos.* 35 Wis. 425; *Marbury v. Madison*, 1 Cranch, 137; *U. S. v. Commissioners*, 1 Morris (Iowa), 42; *Attorney-General v. Blossom*, 1 Wis. 277. Hence, if counsel's position be correct, section 3 is entirely unnecessary. It could be stricken out, and the authority of the court would remain wholly unchanged,—a view hardly consistent with settled rules of construction, and which we are not prepared to adopt. It is our judgment that the section confers upon this court the power to issue the writs therein mentioned *for jurisdiction*, and not in *aid of jurisdiction* previously specified.

What is the nature and extent of the jurisdiction thus given; what is the character of the writs referred to, and for what purpose may they issue?

An incidental question arises as to the meaning of the expression, "and other original and remedial writs." Similar language is found in the corresponding constitutional provisions of several other states. It has been construed to mean writs of a like nature — writs belonging to the same class or genus — as those specifically named. *Vail v. Dinning*, 44 Mo. 214; *Ex parte Allis*, 12 Ark. 116, and cases cited. This construction, though not unquestioned, appears to be sound, and is adopted without further comment.

We may, therefore, at the outset, safely assume that the ordinary summons or process by which delinquent parties are brought before courts to respond for purely private injuries was not in the mind of the constitutional convention when it framed section 3. It has been correctly asserted that the writs designated "bear no resemblance to the usual processes of courts by which controversies between private parties are settled by judicial tribunals of every grade." *Attorney-General v. Blossom, supra.* See, also, *Vail v. Dinning, supra.* On the con-

trary, it will be seen at a glance that all the writs expressly mentioned, save injunction, were prerogative writs of the old common law; and the supreme court of Wisconsin has declared that "the joinder of the doubtful writ [injunction] with the defined writs operates to interpret and restrict its use so far as to be accepted in the \sense of its associates;" that this writ is, by the constitution, put to certain "prerogative uses, and made a *quasi* prerogative writ." *Attorney-General v. Railroad Cos.* 35 Wis. 425. The writ of injunction is not in itself jurisdictional, and therefore is not generally to be termed "original." But the very able opinion in *Attorney-General v. Railroad Cos.*, *supra*, satisfactorily demonstrates that for the use ordained by the constitution it is not inappropriately classed with the original common law writs, also specified. When put to the contemplated prerogative uses, it generally issues upon an information filed by the attorney-general.

Some of these writs, including *mandamus*, have been, in this country, largely shorn of their prerogative character, so far as their general use is concerned; yet in the constitutional provision before us they are intended to furnish this court with an equipment powerful for the protection of the sovereign rights and interests of the state at large, and hence possess a leading prerogative feature. We are clearly of the opinion that original jurisdiction should be here entertained only in cases involving questions *publici juris*, and that the writs from this court should, in general, be put only to prerogative uses.

But these writs are frequently invoked primarily for the enforcement of private rights, while the proceedings may also affect questions of public interest.

The language used, and the general policy indicated, by the various provisions of our constitution relating to the judicial department, construed *in pari materia*, as they should be, indicate that it was not the intention to

have the supreme court entertain original jurisdiction over controversies of the kind last above mentioned; that, even though questions *publici juris* might be indirectly or remotely involved, such cases were in general to be here considered only in the exercise of appellate jurisdiction.   A different view would mar the symmetry of our judicial system.   It would render the supreme court a court of concurrent jurisdiction with several inferior tribunals, in a large class of cases, when no adequate reason for the exceptional arrangement could be assigned.   It would seriously impair the usefulness of this tribunal as a court of review, and thus in a measure defeat the primary and principal object of its creation. Let us accept original jurisdiction of all cases presented wherein the writs named may properly issue, simply because they indirectly relate to matters of public right, and soon but little time would be given to the appellate and superintending duties devolved upon the court.

We believe that original jurisdiction of the writs mentioned, except in cases presenting some special or peculiar exigency, should not be here assumed, save where the interest of the state at large is directly involved; where its sovereignty is violated, or the liberty of its citizens menaced; where the usurpation or the illegal use of its prerogatives or franchises is the principal, and not a collateral, question.

Other courts have considered constitutional provisions substantially the same as those now before us.   In Wisconsin it is said that original jurisdiction was given to the supreme court of these prerogative writs "because they are the very armor of sovereignty,— because they are designed for the very purpose of protecting the sovereignty and its ordained offices from invasion or intrusion, and also to nerve its arm to protect its citizens in their liberties, and to guard its prerogatives and franchises against usurpation." *Attorney-General v. Blossom, supra; Attorney-General v. Railroads, supra.*

Again: "But it is obvious from what has been said, and still more from discussions of the original jurisdiction of this court in first and thirty-fifth Wis., that it is in the public right only — in the interest of the state at large in its sovereign character — that we ought to exercise jurisdiction in such cases." *State v. Baker*, 38 Wis. 79.

The supreme court of Missouri thus expresses itself: "There may be occasions when not only the interest of the citizens, but the safety and welfare of the state, may depend upon the issuance from this tribunal of its original remedial process; and for such exigencies [this] provision was made." *Vail v. Dinning, supra*.

That of Arkansas, after a careful review of their entire judiciary system, under the constitution of 1836, which system in its leading features strikingly resembled our own, reached the conclusion that the constitutional convention intended "to leave with the inferior tribunals the first or original cognizance of cases and controversies between private parties, as well as all controversies in which the state might be a party or otherwise interested, in which the sovereignty or sovereign rights, powers and franchises of the state are not involved." The court adds: "But * * * when the exercise of a public right or a public franchise is the subject-matter of the controversy, the convention appears to have entertained a different view, and to have deemed it a proper subject to be investigated and determined in the first instance by the highest tribunal in the state." *State v. Ashley*, 1 Ark. 309. We are aware that subsequent cases in the supreme court of Arkansas confine the writs mentioned to proceedings in aid of the jurisdiction previously specified, thus, in effect, overruling the opinion from which we quote; but *Price v. Page*, 25 Ark. 527, substantially overrules the intervening decisions as to the question now under consideration, and re-establishes the doctrine announced in *State v. Ashley*. The opinion in

*State v. Ashley* also holds that while the writs of *habeas corpus, quo warranto,* etc., were authorized to inaugurate independent and original proceedings, those covered by the expression "and other remedial writs" were to be invoked only in aid of the appellate jurisdiction or superintending control.    The omission of the word "original," found in the corresponding phrase of our constitution, may perhaps affect the construction; but if it does not, and if the construction of both phrases should be precisely the same, we decline to accept the latter branch of the foregoing proposition.    Upon this subject nothing need be added to what has already been said.

As above suggested, rare instances may occur when, owing to some peculiar emergency or exigency, although the sovereign power, prerogatives or franchises of the state are only indirectly drawn in question, a refusal here to take original jurisdiction would practically amount to a denial of justice.    In such cases this court will sometimes issue its original process.    Whether a sufficient emergency exists will depend upon the circumstances attending each particular case, and will be determined in connection with each application for original relief, as presented.    But in general the view above announced will be strictly adhered to, and unless a cause directly presents as the subject-matter of the proceeding one of the grounds named, its inception will be consigned to the jurisdiction of subordinate tribunals.

Our rule 49 is in harmony with the views herein expressed, though the court has sometimes been liberal in proceeding thereunder.    We have frequently declined to take original cognizance of causes, in some of which questions *publici juris* were involved.    If the intimation of counsel be correct, that there are instances wherein the court has issued these original writs, and where merely private rights were the subject of controversy, or where public rights were indirectly at stake, but no extraordinary emergency existed, we can only

answer that the question now raised was in such cases wholly unnoticed; and, with the supreme court of Wisconsin, express the hope that "in future there will be more care and accuracy by counsel and court." *Attorney-General v. Eau Claire*, 37 Wis. 400.

Cases of which this court should take original cognizance, directly involving, as in general they must, questions of public right, should be brought in the name of the people. The state or the public being the main party in interest, although individual advantage may be gained, the person instituting the proceeding should appear as relator. It is also eminently fitting that such causes be inaugurated before this court by the attorney-general, or with his consent, or, at least, that the refusal of that officer to act be shown. But we do not declare such consent or refusal absolutely necessary. If the main object of the proceeding is to vindicate a public right, to protect the interest of the state in its sovereign character, to prevent the illegal use of a public franchise as against the people generally, or a considerable portion thereof, or if it be to subserve the public interest in any of the other matters heretofore mentioned, a citizen interested could probably institute the proceeding in the name of the people without consulting with the attorney-general.

It is hardly necessary to suggest that where, in one of the inferior courts, the writ is invoked solely for the "protection of a purely private right," the proceeding by *mandamus*, at least, may be in the name of the individual complaining. It is an action under the Civil Code, and such person is then the real party in interest. *Stoddard v. Benton*, 6 Colo. 508.

Let us briefly examine the case at bar in the light of the foregoing conclusions. Wheeler does not sue in the name of the people, nor style himself "relator." On the contrary, he evidently proceeds upon the theory that this is essentially an ordinary private action; for his name is used in the title as plaintiff, and the respondent

company appears therein as defendant. It is true he avers that respondent is imposing, and threatening to impose, upon other persons entitled to water from its ditch the same alleged unlawful exactions of which he complains; but he professes no authority to represent such persons, nor does he invite them to join with him in prosecuting the cause. He attempts to charge the illegal use of a public franchise, yet his sole purpose is to obtain the recognition and enforcement of a private right. The investigation of defendant's illegal conduct is merely an incident to the individual relief that Wheeler demands. A correction or prevention of a wrong resulting to the public at large, or a considerable portion thereof, from defendant's abuse of its franchise, is in no sense the primary or immediate object of the proceedings.

One inferior court, at least, would have had plenary power over the cause, but relator passes it by, avowing his private interest and convenience as his excuse for appealing primarily to the original jurisdiction of this court in the premises. He asks us to take original cognizance of the proceeding, so that his private rights may be *speedily* vindicated, and his personal interest subserved, by the consummation of his individual plans for the present irrigating season. Were we to accept original jurisdiction in this case, it is obvious that we could not consistently decline to do so on any application that would hereafter be urged upon us, where, in even a remote degree, questions *publici juris* might be involved. No exigency exists sufficient to warrant making an exception of the case as now presented. Entertaining this view concerning our jurisdiction, it would be improper for us at this time to determine the remaining questions submitted.

The demurrer to the alternative writ is sustained.

*Demurrer sustained.*

Mr. Justice ELBERT took no part in this decision.