[No. 2798.]

ORMAN ET AL., AS BOARD OF STATE CANVASSERS, v. THE
PEOPLE EX REL. COOPER.

1. Mandamus—Appellate Practice—Jurisdiction of Court of Ap-
   peals.

   The court of appeals has jurisdiction to review either on
appeal or writ of error a final judgment of an inferior court of
record in a mandamus proceeding.

2. Elections — State Board of Canvassers — Jurisdiction — Man-
   damus.

   The duties of the state board of canvassers in canvassing
the returns of an election for representative in the general as-
sembly are purely political and governmental and the courts
have no jurisdiction to control its action therein by mandamus.

3. Same—Discretion.

   Even if the courts had jurisdiction to mandamus the state
board of canvassers the writ would lie only to command the
board to act, and not to control their discretion by commanding
them how to act in a case where there were presented to them
what purported to be two sets of abstracts of votes each claim-
ing to be the correct one.

4. Mandamus—Anticipation.

   The writ of mandamus will not issue in anticipation of an
omission to perform a duty or because the relator fears there
will be an omission, but there must be shown an actual failure
or refusal to perform the duty before a writ of mandamus can
issue to compel its performance.

*Appeal from the District Court of Arapahoe County.*

Mr. T. J. O'DONNELL and Mr. SAM. B. BELFORD,
for appellants.

Mr. H. J. HERSEY, for appellee.

WILSON, P. J.

This was a proceeding in mandamus instituted
against respondents, and appellants, constituting the

state board of election canvassers, which board consisted of the several individuals then holding the five highest state executive offices, namely, governor, secretary of state, auditor of state, treasurer and attorney-general. The petition set forth that the relator was a candidate for representative from San Juan county at the recent general election; that there had been presented to the state board of canvassers two abstracts of the votes cast in said San Juan county for representative, or what at least purported to be such abstracts, the one signed by the county clerk of said county, alone, and showing thereon that the relator had received at such election the highest number of votes cast for representative; and the other signed by two justices of the peace who had been called to assist the county clerk as required by law in canvassing the precinct returns, showing that one J. T. Whitelaw had received the highest number of votes for such office. The petition further alleged, upon information and belief, that it was the purpose and plan of the respondents to unlawfully and wrongfully recognize and act upon the last-mentioned abstract, thereby determining that said Whitelaw had received the highest number of votes cast in said county for representative, and causing a certificate of election to be issued to him to that effect, and prayed that the respondents be compelled by mandate of the court, to recognize and canvass the abstract of votes signed by the county clerk of said San Juan county, and that they be enjoined and restrained and prohibited from canvassing the abstract signed by the two justices of the peace. Judgment was rendered awarding the writ in accordance with the prayer of the petition, and from this the respondents appeal. The case comes up in this court at the present time upon motion of respondents to set aside and vacate so much of the mandate of the district court as en-

joined or commanded the said board of canvassers to refrain from considering, recognizing or canvassing what purported to be the abstract of the votes of San Juan county, signed by the two justices of the peace.

At the outset, relator challenges the jurisdiction of this court, contending that in proceedings of this character the court of appeals has no jurisdiction to review the judgment of a district court, either upon appeal or error. The ground upon which counsel so contend is, as we understand it, that mandamus is a special procedure, and that in the code provisions providing such special procedure, no provision whatever is made for an appeal to this court, or for review by this court of the proceeding on writ of error. In the act creating the court of appeals, the court was invested with jurisdiction to "review the final judgments of inferior courts of record in all civil cases and in all criminal cases not capital."—3 Mills' Ann. Stats., sec. 1002d; Laws 1891, p. 119, sec. 4. That a proceeding in mandamus under the code is not a civil case or action cannot be successfully maintained upon reason or authority, and indeed relator does not appear to rely upon such contention. In this jurisdiction, the question if it existed at all, is settled by our own supreme court.—*Stoddard v. Benton,* 6 Colo. 508; *Jones v. Bank of Leadville,* 10 Colo. 479. If mandamus be a civil remedy, as the supreme court says, we cannot conceive of any way in which it can be enforced save by a civil action.

The fact that the court of appeals is confessedly without original jurisdiction to issue writs of mandamus, has no bearing whatever upon the question here presented. The court is also without original jurisdiction to issue any of the original and remedial writs which the supreme court is invested by the constitution with power to issue.—Constitution, art. 6,

sec. 3. We fail to see, however, why this fact has any bearing, even in the remotest degree, upon the jurisdiction of this court to review upon appeal and error the final action or judgment of the district courts in such cases, they being inferior courts of record. Neither has the language of the constitutional provision above cited, giving the supreme court the power to issue such writ, and also "authority to hear and determine the same," any bearing upon the question here presented. By that the supreme court was simply vested with the power to hear and determine the writ which it might issue. Its power or its jurisdiction to review upon appeal or error the action of district courts in the issuance of such writs, was not derived from nor dependent upon the use of that language in the constitution.

That the judgment in this proceeding was not final is not even suggested. This proceeding therefore being a civil action, and the judgment rendered being final, this court has unquestioned jurisdiction to review the latter, either on appeal or error.— *Livermore v. Truesdell,* 7 Colo. App. 470.

Respondents on their part challenge the jurisdiction of the district court over the subject-matter of this suit, or of these appellants, or either of them, denying the existence of any right, power or authority in it to issue the writ or to enjoin, command or coerce respondents as by the said writ it was assumed and purported to be done.

Counsel take the position that the state board of canvassers in the exercise of the power here in question,—that is, in the canvassing of the returns of an election for representative in the general assembly,— is in the discharge of duties purely political and governmental, and hence that its action cannot be controlled by mandamus. In our opinion this conten-

tion is correct.—*Greenwood, etc., Land Co. v. Routt et al.,* 17 Colo. 157.

It would seem that regardless of the official position of the individuals upon whom should be imposed the final duty of determining in the first instance who has been elected to and should constitute the legislative assembly, the duty would be in the highest degree political and governmental in its character. The legislative department constitutes one of the three separate political subdivisions into which the state government is divided, and it would appear that the determination of its membership, subject only to its own control, would be in the performance of a duty of a political and governmental nature, and a highly important one. The individuals constituting the board consist of the highest officials in the executive branch of the government. The duty is imposed upon them, not as individuals but as executive officials.—Gen. Laws, p. 376, sec. 982; 1 Mills' Ann. Stats., sec. 1631.

In this instance, it was imposed upon James B. Orman, not individually but upon him as then governor of the state, and so of each of the other officials. When a performance of a duty is by law entrusted to or required of an executive department or departments of the government *eo nomine,* the performance of the duty is an official act. Although not created by the constitution, it may be said of the state board of canvassers, as was said by the supreme court of the state board of assessors, it is a part of the executive branch of the state government, because it is not part of the judiciary, which construes the laws, nor a part of the legislative department, which makes the laws, and because it is charged with the detail of carrying the laws into effect, to wit, the laws for the election of members of the general assembly.— *People v. District Court,* 29 Colo. 182.

The legislature which created the board entrusted to it the governmental and political duty of determining, subject only to the control of the legislature itself, who had been elected to membership in the legislative branch of the government, and who was entitled to a certificate of election as such. The constitution most jealously guarded the membership of the legislative branch of the state government by providing that it should be the sole judge of the election and qualifications of its own members, a most important consideration to secure the independence of a separate and distinct branch of the government, and it is equally important to secure the same object, that the legislature should have the power to and should create a board, independent so far as possible and free from interference with or control by other departments of the government, which should have the power to determine in the first instance before the legislature assembled, who was *prima facie* entitled to membership in that body. If a board so constituted and under such circumstances were not in the exercise of governmental and political duties of the highest character, then we cannot conceive of what would still be necessary in order to constitute duties of such a character. If the legislature in canvassing the returns of the election of members of the state executive department is charged with duties of a governmental and political nature, a proposition which we have not heard questioned, the same must be true of the state board of canvassers composed of members of the executive department in canvassing the election returns for members of the legislature. We can see no difference in the character of the duties.

Authorities directly in point we have failed to find, and counsel have cited us to none. Many cases are referred to, but their determination is largely

dependent upon varying constitutional and statutory provisions in the various states. The case nearest in point to which our attention has been called, and the reasoning in which commends itself to us, is one from Maine—*Dennett, Petitioner,* 32 Me. 509.

There is nothing in what we have said in conflict with the views expressed by the supreme court in the case of the *Greenwood Land Company v. Routt et al., supra.* In that case it was held that the act in question did not come within the exercise by the governor of any of his political or governmental powers,—that it was purely and simply a ministerial act, in the performance of which he had no official discretion whatever.

*Kindel v. Le Bert,* 23 Colo. 386, has no bearing upon the question here involved. That case concerned a county board of canvassers, the nature and character of the duties imposed upon and required of which are entirely different from those entrusted to the state board of canvassers.

Even, however, if there should be doubt as to the correctness of the views which we have just expressed concerning the nature and character of the duties of the state board of canvassers with reference to the act here under consideration, and even though it should be conceded that the powers and duties of the state board are ministerial in their character, yet our conclusion that the district court was without power to render the judgment which it did is none the less correct. The rule is elementary and too well known to require citation of authorities in its support, that even as to ministerial acts, where there exists any official discretion at all, mandamus will lie only to command action, and cannot be used to control discretion. Whatever may be said as to the composition of the board and the character of its duties, it cannot be questioned that the court

in this instance undertook to control the discretion of the board. There were presented to the board what purported to be two sets of abstracts of votes from San Juan county, each claiming to be the correct one, and upon this question the board had the right to pass, uncontrolled by any judicial power. Disregarding this rule, however, the court in this instance undertook to decide for the board,—to take away from it the power to exercise any discretion,—to compel the board in advance to accept and act upon one abstract of the votes as the true abstract, and to absolutely reject the other. We think that the mere statement of the fact is sufficient to demonstrate that under all authorities and under all rules, the court was without such power. If the doctrine contended for by relator be accepted then the judiciary could usurp the functions of all canvassing boards, and unduly control, by controlling their membership, both the executive and legislative departments, co-ordinate and intended to be independent branches of the state government. The same principle which would permit it to control the state board of canvassers in respect to its duty to canvass the returns of election for members of the legislature, would empower it to control the legislature in the performance of its duty to canvass the returns of election for members of the executive department, and the state board in canvassing the election returns for representatives in congress and for presidential electors.

There is still another reason, cogent and conclusive, why the court was without authority to render the judgment which it did. It was neither alleged nor shown that the board had refused to discharge the duty, the performance of which it was sought to enforce by mandamus. There was no neglect of duty shown that might be deemed in law the equivalent to a refusal and be sufficient to dispense with the neces-

sity of an actual refusal. There was no omission to perform the duty alleged or shown, because the board was then engaged in the discharge of its duty in canvassing the election returns, had not yet concluded its labors, and the limit of time for this conclusion, as fixed by statute, had not been reached. The writ was prayed solely upon the ground that the relator *feared* that the board would not properly discharge a future duty. It was asked solely in anticipation of a supposed omission to perform a duty. It is uniformly laid down by all authorities, and is well settled, that a writ of mandamus will never be granted under such circumstances. The rule is thus clearly expressed by Mr. High:

"Mandamus is never granted in anticipation of a supposed omission of duty, however strong the presumption may be that the persons whom it is sought to coerce by the writ, will refuse to perform their duty when the proper time arrives. It is, therefore, incumbent upon the relator to show an actual omission on the part of the respondent to perform the required act, and since there can be no such omission before the time has arrived for the performance of the duty, the writ will not issue before that time. In other words, the relator must show that the respondent is actually in default in the performance of a legal duty then due at his hands, and no threats or predetermination can take the place of such default before the time arrives when the duty should be performed; nor does the law contemplate such a degree of diligence as the performance of a duty not yet due."—High on Extraordinary Legal Remedies, § 12.

For these reasons, the motion to set aside and vacate the injunctive part of the writ will be allowed, and it will be so ordered.